SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
8367 West Flamingo Avenue, Suite 100
Las Vegas, Nevada 89147
(702) 304-0432 – telephone
(702) 922-3851 – facsimile

*Attorneys for Plaintiff Righthaven LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>KEVIN KELLEHER, an individual,<br><br>　　　　　　Defendant. | Case No.: 2:10-cv-01184-KDJ-RJJ<br><br>**RESPONSE TO ORDER TO SHOW CAUSE WHY ACTION SHOULD NOT BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION** |

　　　Righthaven LLC ("Righthaven") hereby responds to the Court's November 2, 2011 Order to Show Cause why its Complaint should not be dismissed for lack of subject matter jurisdiction (the "OSC"). (Doc. # 28.) As the Court most certainly recalls, the OSC was issued based on Righthaven's disclosure of several adverse decisions from this District, several of which are currently on appeal to the United States Court of Appeals for the Ninth Circuit. Righthaven brought these adverse decisions to the Court's attention to permit it to address the issue of subject matter jurisdiction in this case prior to conducting trial and pursuant to its duty of candor to the tribunal.

　　　Righthaven's response to the OSC is based on the below Memorandum of Points and Authorities, the declarations of Steven A. Gibson, Mark A. Hinueber and Shawn A. Mangano, Esq., the pleadings and papers on file in this action, any oral argument this Court will entertain at the OSC hearing, and any other matter upon which this Court takes notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Congress authorized a limited monopoly in copyrighted works "to motivate the creative activity of authors and inventors by the provision of a special reward."  *See Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 429.  Yet, since the proliferation of the internet and the number of people with websites and blogs, copyright holders have seen their works repeatedly copied and posted online without permission, recognition, or compensation.  That is the case here, where the Defendant displayed an unauthorized reproduction of an article by the *Las Vegas Review-Journal* on their blog.   The abundance of infringement just like the one at issue here is why Stephens Media LLC ("Stephens Media"), owner of the *Las Vegas Review-Journal*, entered into an agreement with Righthaven to help it pursue such infringers.

Part of the strategy to pursuing online infringers requires Stephens Media to assign its copyright in a particular work to Righthaven, along with the right to sue for past, present and future infringement.  It is black letter law that at the moment such an assignment occurs, Righthaven, as the current copyright owner, has standing to pursue a claim for infringement. This is a much different situation than in *Silvers v. Sony Pictures Entm't Inc.*, 402 F.3d 881, 884 (9th Cir. 2005), where the plaintiff, assigned only a ***bare right to sue*** for past copyright infringement, lacked standing.

To further clarify the mutual intent of Righthaven and Stephens Media to confer full ownership in copyright to Righthaven when entering into copyright assignments, both parties have provided declarations in support of this memorandum.  Thus, to the extent the Court finds that anything in the Strategic Alliance Agreement ("SAA") or copyright assignment is ambiguous such that it is unclear whether Righthaven has standing, it may interpret these agreements to confer full ownership rights in Righthaven.  The Court's ability to do this is also expressly set forth in the SAA, which vests the Court with the power to correct any defective provision in order to "approximate the manifest intent of the [p]arties."  (Gibson Decl. ¶ 11, Ex. 2 § 15.1; Hinueber Decl. ¶ 10, Ex. 2 § 15.1.)

In an effort to cure any doubt as to whether Righthaven has full ownership in an assigned copyright, on May 9, 2011, Righthaven and Stephens Media executed a Clarification and Amendment to Strategic License Agreement (the "Amendment"), which not only makes clear that Righthaven has full ownership rights in any assigned copyright, it gives Stephens Media only a non-exclusive right to use an assigned work.

Subsequent to executing the Amendment, Righthaven and Stephens Media elected to further amend the Strategic Alliance Agreement in light of recent decision in *Righthaven LLC v. Hoehn*, where the Court in that case found that Righthaven lacked standing to sue, even under the Amendment.  Doc. # 28, Case. No. 2:11-CV-00050-PMP-RJJ (D. Nev.) (Pro, J.) ("*Hoehn*"). (Dkt. 44 at n. 1.)

While Righthaven continues to believe that the Amendment was sufficient to confer standing to sue, Righthaven and Stephens Media wish to put the standing issue to rest. Therefore, these parties further amended the Strategic Alliance Agreement in order to address the concerns raised by the Court in *Hoehn*. The Amended and Restated Strategic Alliance Agreement ("Restated and Amended SAA") was executed on July 7, 2011. (Mangano Decl. Ex. 1.) The Restated and Amended SAA gives Righthaven the sole discretion to determine whether or not to bring an infringement action based on an assigned copyright.  Further, as in the first Amendment, Righthaven is the sole owner of each assigned copyright, and Stephens Media holds only a non-exclusive license.  Stephens Media may not encumber Righthaven's rights in any assigned copyright, and Stephens Media's option to re-purchase any assigned copyright does not accrue until five years after the copyright is assigned.  In short, there can be no question that Righthaven is the only true owner of any assigned copyright and thus, has standing to sue for infringement.

For these reasons, Righthaven respectfully requests that the Court find that it has at all times had standing to maintain this suit, or in the alternative, that any defect in Righthaven's standing has been cured by the Amendment and/or the Restated and Amended SAA.

## II.   STATEMENT OF FACTS

Righthaven is the owner of a copyright registration for the literary piece "Calvert, longtime voice of UNLV, among six-member class" (the "Work"), which originally appeared in the *Las Vegas Review-Journal* on or about June 5, 2010.  (Doc. # 1 at 2-3, Ex. 3.) Stephens Media, the original owner of the Work, assigned all rights, title and interest in and to the Work, including the right to seek redress for all past, present and future infringements (the "Assignment").[1]  On July 9, 2010, the United States Copyright Office (the "USCO") granted registration of the Work. (Doc. # 1 at 3, Ex. 5.)

As alleged in the Complaint, Defendant Kevin Kelleher ("Defendant") is identified as the owner of the Internet domain found at <pa-announcer.blogspot.com> (the "Domain" and together with the content appearing thereon referred to herein as the "Website"), as evidenced by the "About Me" section of the Domain. (Doc. # 1 at 2, Ex. 1.) Righthaven alleges that on or about June 5, 2010, Defendant displayed an unauthorized reproduction of the Work on the Website.  (Doc. # 1 at 2, Ex. 4.)  Righthaven further maintains that Defendant did so in willful disregard of the copyrights to the Work.  (Doc. # 1 at 4.)

The Court issued the OSC on November 2, 2011, ordering Righthaven to respond in writing as to why its Complaint should not be dismissed for lack of subject matter jurisdiction. (Doc. # 28.) This filing is in response to the Court's OSC.

## III.   ARGUMENT

Standing is a jurisdictional requirement of subject matter that can be raised at any time, including *sua sponte* by the court, as is the case here.  *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008).  Pursuant to Section 501(b) of the Copyright Act, only "the legal or beneficial owner of an exclusive right under a copyright" is entitled to sue for infringement.  *Silvers*, 402 F.3d at 884.  Section 106 of the Act, in turn, defines the exclusive rights that can be held in a copyright (*e.g.* the right to reproduce, to prepare derivative works, and

---

[1]  Righthaven is in the process of locating a copy of the Assignment executed by Stephens Media. Despite this shortcoming, Righthaven represents that the Assignment is identical to the assignment submitted in connection with the declarations of Mr. Gibson and Mr. Hinueber.

[2]  Under the Amendment and the Restated and Amended SAA, Stephens Media's interest has

to distribute copies). Exclusive rights in a copyright may be transferred and owned separately—for example, through assignment or an exclusive license—but no exclusive rights exist other than those listed in Section 106. *Silvers*, 402 F.3d at 885. While the right to assert an accrued cause of action for copyright infringement cannot be transferred alone, such a right can be transferred along with one or more of the exclusive rights in a copyright. *See id.* at 890.

As the assignee-owner of the full right and title in and to the Work, Righthaven has standing to sue for acts of copyright infringement occurring after it acquired ownership of the copyright. Pursuant to the express terms of the Assignment, Stephens Media also expressly transferred to Righthaven the right to assert accrued causes of action for infringement of the Work, giving Righthaven standing to sue for Defendants' infringement, even though that infringement occurred prior to the Assignment. (Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1.) In addition, Stephens Media and Righthaven subsequently the Amendment and the Restated and Amended SAA in order to further clarify and effectuate, to the extent not already accomplished, what has at all times been the intent of the parties—to transfer full ownership in copyright to Righthaven. (Gibson Decl. ¶ 12, Ex. 3; Hinueber Decl. ¶ 11, Ex. 3; Mangano Decl. Ex. 1.) Either of these amendments has cured any defects in standing that existed under the parties' original contractual relationship. (*Id.*) Therefore, as set forth below, Righthaven respectfully requests that the Court find that Righthaven has standing to maintain this action.

**A.     Pursuant to the Written Assignment, Righthaven Has Standing to Sue for Past Infringement.**

Binding precedent establishes that the assignment from Stephens Media to Righthaven conveys upon Righthaven standing to bring this case. In *Silvers*, the Ninth Circuit held that an assignor can transfer the ownership interest in an accrued past infringement, but the assignee has standing to sue only if the interest in the past infringement is expressly included in the assignment and the assignee is also granted ownership of an exclusive right in the copyrighted work. *Id.* at 889-90. In so holding, the panel in *Silvers* aligned Ninth Circuit law with that of the Second Circuit as set forth in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 944 F.2d 971, 980

(2d Cir. 1991), which recognized the right to sue for past infringement when both the copyright and the accrued claims were purchased.  *Silvers,* 402 F.3d at 889.

Multiple courts in this district have already determined that Righthaven has standing to bring a claim for past infringement under the Ninth Circuit's standard in *Silvers,* **based on the plain language of the copyright assignment**:

- *Righthaven LLC v. Vote For The Worst, LLC, et al.,* No. 2:10-cv-01045-KJD-GWF (D. Nev. March 30, 2011).
- *Righthaven LLC v. Majorwager.com, Inc.,* 2010 WL 4386499, at *2 (D. Nev. Oct. 28, 2010).
- *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372, at *2 (D. Nev. Sept. 2, 2010).
- *Righthaven LLC v. Virginia Citizens Defense League, Inc.,* No. 2:10-cv-01683-GMN-PAL (D. Nev. June 23, 2011) (Doc. # 26 at 11-14).

(*See also* Gibson Decl. ¶¶ 9-10.)

Just like the assignments at issue in the cases above, the Assignment here transferred all exclusive ownership rights in and to the Work to Righthaven, and expressly included all accrued causes of action for copyright infringement:

> Assignor hereby transfers, vests and assigns [the Work]…to Righthaven…all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for ***past, present and future infringements*** of the copyright in and to the Work.

(Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1, emphasis added.)  At the moment of the Assignment, Righthaven became the owner of the Work with all rights of ownership, including the right to register the Work, license the Work and seek redress for infringement, including past infringement.  In other words, the Assignment conferred upon Righthaven the exclusive rights required under the Copyright Act to bring suit for **both** past and future acts of infringement.  As parties frequently do, Righthaven licensed back to Stephens Media the right to exploit the Work.  It also sought registration of the Work with the USCO and brought suit against a blatant infringer.

Given several adverse decisions from this District, of which the Court was advised by Righthaven's counsel, there would understandably be concern over the SAA's effect on the Assignment.  But nothing in the SAA's provisions alter the unambiguous language of the Assignment or the rights that Righthaven acquired.  First, the SAA does not effectuate the assignment of any work.  (Gibson Decl. ¶ 5, Ex. 2 § 7.2; Hinueber Decl. ¶ 5, Ex. 2 § 7.2.)  Rather, the SAA reflects promises made by the parties with regard to future transactions in copyrights.  (*Id.*)  The SAA envisions an assignment to Righthaven of all rights, title and interest in and to potential copyrighted works, which includes the right to sue for any past, present or future infringements, coupled with a license back to Stephens Media of the right to exploit any copyrighted works.  (*Id.*)  But the SAA itself does not cause an assignment of property rights.

Nor does the SAA's right of reversion provision have any impact on Righthaven's present standing to sue for past infringement.  The right of reversion gives Stephens Media the right to regain the ownership to any assigned work in the future under certain conditions.  (*Id.* § 8.)  That future right has no impact on Righthaven's current ownership status, its ownership status at the time of the assignment, or its status at the time it filed this action.  Indeed, unless and until Stephens Media exercises its right of reversion, that right will have no impact whatsoever.  Stephens Media has not exercised that right (Gibson Decl. Ex. 2 § 8; Hinueber Decl. Ex. 2 § 8.), and there is nothing in the record to suggest it will.

While parties in numerous other actions have alleged that this transactional structure constitutes a "sham" or meaningless assignment, adopting these allegations by a finding that Righthaven lacks standing to maintain this action for past infringement would eviscerate countless complex commercial and intellectual property transactions.  "Principles of contract law are generally applicable in the construction of copyright assignments, licenses and other transfers of rights."  *Key Maps, Inc. v. Pruitt,* 470 F. Supp. 33, 38 (S.D. Tex. 1978).  An assignment transfers all rights, title and interest in and to the assigned property.  *See id.; see also Pressley's Estate v. Russen,* 513 F. Supp. 1339, 1350 (D. N. J. 1981) ("An assignment passes legal and equitable title to the property . . . .").  Axiomatically, when the totality of rights are assigned by one party to another, and the party receiving said assignment then conveys a license of some

interest to the same party or to another party, complete title to ownership vests in the assignee *prior to being divested through licensure*. In essence, this structure is akin to a real property transaction whereby one party holding a fee simple interest grants a life estate to another party, thereby resulting in the fee simple owner being temporarily divested of his right to use and enjoyment of the conveyed property during the lifetime of the life estate holder.  The fee simple holder is still the "owner" of the property and will once again enjoy all rights, title and ownership upon expiration of the life estate.

Under the original version of the SAA, Stephens Media is granted an exclusive license to exploit copyrighted works following their assignment to Righthaven.[2] While this transactional structure described in the SAA, in which a license is given back to Stephens Media, may potentially be construed to limit Righthaven's ability to bring suit for present and future infringements during the term of the license, it does not limit the company's ability to bring suit for past infringements, which is precisely what is at issue here.  As the Ninth Circuit held in *Silvers*, the right to sue for past infringement requires only an assignment of an ownership interest along with the expressed right to sue for an accrued claim for infringement.  *Silvers,* 402 F.3d at 889-90.

The transactional structure under the SAA and the actual assignment of rights comport with the holding in *Silvers*.  Pursuant to the individual assignments that are ultimately executed, Righthaven is assigned all ownership rights, along with the right to sue for past, present and future infringements, associated with the work assigned.  (*See, e.g.,* Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1.)  While Righthaven promises under the SAA to license rights back to Stephens Media to exploit the acquired works, there can be no license until *after* the assignment of ownership rights and the right to sue for past infringements is conveyed.  This structure thus conveys ownership and the right to sue for accrued infringement claims, which is precisely what is required to establish standing under *Silvers* for purposes of accrued or past infringement

---

[2]  Under the Amendment and the Restated and Amended SAA, Stephens Media's interest has been clarified to be that of a non-exclusive licensee, which lacks standing to maintain suit for copyright infringement. *See, e.g., Silvers* 402 F.3d at 884-85.

claims.  Any other conclusion would require the Court to ignore the expressly defined

assignment and license-back structure contemplated by the parties to the SAA.

> **B.      The Court Should Construe the Contracts to Convey to Righthaven All
> Rights Necessary for It to Have Standing.**

Under Nevada law,[3] the Court should interpret the contracts to find that they convey any

and all rights necessary to establish Righthaven as the true and lawful owner of the copyright to

the Work.  To the extent there is any ambiguity with respect to whether the Assignment

sufficiently conveyed the rights to Righthaven so that it has standing to bring this action, the

court should look to parties' intent.  *Sheehan & Sheehan v. Nelson Malley & Co.,* 121 Nev. 481,

488, 117 P.3d 219, 224 (2005) (internal quotation omitted).  Moreover, pursuant to the express

language of the SAA, if any portion of the SAA is deemed void or unenforceable, the Court is

contractually vested with the power to correct any defective provision in order to "approximate

the manifest intent of the [p]arties."  (Gibson Decl. ¶ 11, Ex. 2 § 15.1; Hinueber Decl. ¶ 10, Ex. 2

§ 15.1.)

There can be no question that the parties intended to convey to Righthaven any right

necessary for it to bring suit.  As set forth in the accompanying declarations and as reflected in

the SAA, the Assignment, and the recently-executed Amendment and the Restated and Amended

SAA discussed below, the parties to the SAA and the Assignment intended to vest copyright

ownership of specific works in Righthaven so as to grant it the right to sue for infringement,

including past infringement, while still permitting Stephens Media to use the works going

forward based on a license of rights to do so from Righthaven.  (Gibson Decl. ¶¶ 5-12, Exs. 2-3;

Hinueber Decl. ¶¶ 5-11, Exs. 2-3.)   Accordingly, the Court should construe the contracts in such

a way that they convey to Righthaven all rights that are necessary to have standing to maintain

this action.  If the Court does so, Righthaven has always had standing to bring this suit.

---

[3] The SAA is expressly governed by Nevada law.  (Gibson Decl. ¶ 5, Ex. § 15.3; Hinueber Decl. ¶ 5, Ex. § 15.3.)

**C.      Standing Is Also Effected by the Amendments to the SAA.**

As stated above, Righthaven has standing to bring suit pursuant to the Assignment and SAA, which expressly confer (and reflect the intent to confer) full copyright ownership on Righthaven.  Nevertheless, to further clarify the parties' intent—and to preempt any future challenges to Righthaven's standing—Righthaven and Stephens Media have clarified and amended their intent when entering into the SAA as set forth in the supporting declarations and in the Amendment and in the Restated and Amended SAA.  (Gibson Decl. ¶ 12, Ex. 3; Hinueber Decl. ¶ 11, Ex. 3; Mangano Decl. Ex. 1.)  These amendments reflect the subsequent and current, based on the Restated and Amended SAA, contractual relationship between the parties.

In the Amendment, Righthaven and Stephens Media promise to execute individual assignments for certain copyrighted works (as before), but Righthaven promises to grant Stephen's media only a non-exclusive license to exploit the work.  (Gibson Decl. Ex. 3 at 1-2; Hinueber Decl. Ex. 3 at 1-2.)  As a mere holder of the right to use the assigned copyrighted work, Stephens Media would not have standing to sue for infringement.  *See, e.g., Silvers* 402 F.3d at 884-85.  Thus, the sole party holding any exclusive rights, and the attendant standing to sue for infringement, would be Righthaven.  *See id.*  This agreement reflects the parties' intent to transfer full rights in the copyright to Righthaven.  (Gibson Decl. ¶¶ 5-12, Ex. 3; Hinueber Decl. ¶¶ 5-11, Ex. 3.)  Further, the Amendment extinguishes the "right of reversion" previously held by Stephens Media, and replaces it with a standard option to re-purchase the copyright upon the satisfaction of certain conditions.  (Gibson Decl. Ex. 3 at 2-3; Hinueber Decl. Exs. 3 at 2-3.)  The Amendment also contains provisions requiring Stephens Media to pay Righthaven royalties for its use of the Work, making Righthaven the beneficial owner in the Work, in addition to its status as legal owner. (*Id.* at 1-2.)

Likewise, the Restated and Amended SAA further clarifies Stephens Media holds a non-exclusive license to exploit the works assigned to Righthaven. As a non-exclusive licensee, Stephens Media cannot sue for infringement of the Work.  *See Davis v. Blige,* 505 F.3d 90, 101 (2d Cir. 2007)("[T]he holder of a nonexclusive license may not sue others for infringement."); *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 775 (7th Cir. 1996)("[A] person holding a nonexclusive

10

license has no standing to sue for copyright infringement."); *Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 32 (2d Cir. 1982)("The Copyright Act authorizes only to types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights.").  Rather, the right to sue for infringement of the works is held by Righthaven, which acquired ownership of the Work based on the Assignment from Stephens Media. *See* 17 U.S.C. § 101; 17 U.S.C. § 501(b).

Second, the Restated and Amended SAA eliminates two provisions that were concerns in the *Hoehn* decision: (1) a provision giving Stephens Media 30 days written notice prior to exploiting an infringed work; and (2) a separate provision giving Stephens Media the option to repurchase the copyright. (Doc. # 28 at 10.)  The 30-day notice provision has been completely eliminated from the Restated Amendment.  (Mangano Decl. Ex. 1.)  Likewise, Stephens Media's option to repurchase and assigned work may only be exercised five years after the date of assignment and fair market value must be paid to require a work.  (*Id.*)  Thus, Righthaven owns the works for at least a five-year term without the possibility of Stephens Media exercising its option to repurchase shortly after assignment under a potential scenario given the terms of the Clarification recognized in the *Hoehn* decision.

Finally, the Restated and Amended SAA does not restrict Righthaven's ability to exploit assigned works in any manner.  Under the Clarification, the *Hoehn* decision expressed concern over the requirement that Righthaven notify Stephens Media of its intent to exploit any work outside of copyright infringement litigation.  This notice requirement does not exist under the Restated Amendment.  (Mangano Decl. Ex. 1.)  Moreover, there is no restriction imposed on Righthaven's ability to exploit works or to license works to other parties.  (*Id.*)

Quite frankly, Righthaven has sought to fully address all of the concerns expressed in the *Hoehn* decision.  In doing so, this Court is presented with record that is unlike those at issue in either the *Democratic Underground* or the *Hoehn* decisions.  Most importantly, however, Righthaven has protectively addressed the concerns expressed as an impediment to it having standing.  Accordingly, the Court should find Righthaven has standing to maintain the actions

11

identified in the OSC.  In doing so, Righthaven hopes the standing issue is finally resolved in its

favor so that it is no longer asserted by copyright infringers as a basis for escaping liability.

Courts frequently allow parties to a copyright transfer to subsequently clarify or amend

their agreement in order to express their original intent to grant the assignor the right to sue for

infringement.  *See Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003)

(recognizing that an oral assignment can be confirmed later in writing); *Imperial Residential*

*Design, Inc. v. Palms Dev. Group, Inc.,* 70 F.3d 96, 99 (11th Cir. 1995) ("[A] copyright owner's

later execution of a writing which confirms an earlier oral agreement validates the transfer ab

initio."); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1532 (11th Cir.

1994); *see also Sabroso Publ'g, Inc.,* 141 F. Supp. 2d at 228; *Intimo, Inc. v. Briefly Stated, Inc.,*

948 F. Supp. 315, 318 (S.D.N.Y. 1996) (giving effect to a "very late" amendment granting the

plaintiff the right to bring the accrued causes of action); *Goldfinger Silver Art Co., Ltd. v. Int'l*

*Silver Co.,* 1995 WL 702357, at *4 (S.D.N.Y. Nov. 28, 1995) (holding that plaintiff could cure

standing defect after the action was filed); *Infodek, Inc. v. Meredith-Webb Printing Co., Inc.,* 830

F. Supp. 614, 620 (N.D. Ga. 1993) (holding that second assignment cured standing defect).

Given that the parties to the Assignment, the Amendment , and the Restated and

Amended SAA do not dispute the rights in the Work and the Defendant has not been prejudiced

in any way by the Amendment, the Court—if it finds that original standing was defective—

should allow the Amendment to cure the defect without dismissing the case.[4]  *See Intimo, Inc.,*

948 F. Supp. at 317-18; *Infodek, Inc.,* 830 F. Supp. at 620; *Wade Williams Dist., Inc. v. Am.*

*Broad. Co., Inc.,* 2005 WL 774275, at *4 (S.D.N.Y. April 5, 2005); *see also Dubuque Stone*

*Prod. Co. v. Fred L. Gray Co.,* 356 F.2d 718, 724 (8th Cir. 1966); *Kilbourn v. Western Surety*

*Co.,* 187 F.2d 567, 571 (10th Cir. 1951).  Moreover, permitting subsequent clarification or

amendment of the parties' original intent so as to cure any technical standing defects promotes

---

[4]  Federal Rule of Civil Procedure 17(a) additionally supports Righthaven's request to have the
parties' intent to grant the company standing to bring this action by recognizing and giving effect
to the Amendment and the Restated and Amended SAA through ratification.  *See Clarkson Co.
Ltd. v. Rockwell Int'l Corp.,* 441 F. Supp. 792, 797 (N.D. Cal. 1977).

judicial economy and reduces litigation costs that would necessarily arise from the dismissal and re-filing of a new action.  *Intimo, Inc.,* 948 F. Supp. at 318-19.

**IV.      CONCLUSION**

For the foregoing reasons, Righthaven respectfully requests the Court find that Righthaven has standing to maintain this infringement action.

Dated this 15th day of November, 2011.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
(702) 304-0432 - Telephone
(702) 922-3851 - Facsimile

*Attorney for Righthaven LLC*

1

## **CERTIFICATE OF SERVICE**

2  Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I on this 15th day of

3 November, 2011, I caused the foregoing document to be served by the Court's CM/ECF system.

4           SHAWN A. MANGANO, LTD.

5           By: /s/ Shawn A. Mangano

6           SHAWN A. MANGANO, ESQ.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28